UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY ANNE BAKER,                                    17-CV-1267-MJR
                                                     DECISION AND ORDER
                Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 8).

      Plaintiff Kelly Anne Baker brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Baker's motion (Dkt. No. 9) is denied and the Commissioner's motion (Dkt. No. 15) is granted.

## BACKGROUND

      On May 5, 2014, Baker filed applications for DIB and SSI alleging disability since April 16, 2014 due to cervicalgia, cervical spondylosis, lumbar spondylosis, thoracic spondylosis, spinal stenosis, neuropathy in her legs, fibromyalgia, hypothyroidism, edema, and psoriatic arthritis. (*See* Tr. 53-54, 155-73, 210).[1] Born in 1962, Baker was fifty-one years old at the time of her applications. (Tr. 155). She previously worked as

---

[1] References to "Tr." are to the administrative record in this case.

an asset recovery agent, retail store manager, assistant retail store manager, and an administrative assistant, among other jobs (Tr. 248), but she contends that she can no longer work because of her impairments. Baker's applications were denied on July 28, 2014 (Tr. 53-84) after which she requested a hearing before an Administrative Law Judge (Tr. 85-89). On January 24, 2017, Baker appeared with counsel before Administrative Law Judge Eric L. Glazer (the "ALJ") for a hearing. (Tr. 34-46). On May 12, 2017, the ALJ issued his decision denying Baker's DIB and SSI claims. (Tr. 13-30). Baker requested review by the Appeals Council (Tr. 149-51), but on October 17, 2017, the Appeals Council denied Baker's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-7). This action followed.

## **DISCUSSION**

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.  *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed

in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1)*.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. <u>*The ALJ's Decision*</u>

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Baker has not engaged in substantial gainful activity since April 16, 2014, her alleged onset date. (Tr. 18). At step two, the ALJ concluded that Baker has the following severe impairments: "status-post surgery of the lumbar and cervical spines with spondylolistheses and polymyalgia rheumatica." (*Id.*). At step three, the ALJ found that Baker does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19). Before proceeding to step four, the ALJ assessed Baker's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in [20 C.F.R. §§404.1567(b) and 416.967(b)][2] except she can occasionally stoop and bend. She cannot perform work requiring fine use of the fingers, but she can perform jobs requiring gross use of the hands to grasp, hold, and turn objects. She has the inability to ascend or descend scaffolding, poles, and ropes and the inability to crawl on her hands and knees.

(*Id.*). Proceeding to step four, the ALJ found that Baker is unable to perform any of her past relevant work. (Tr. 22). Thus, at the fifth step, the ALJ considered Baker's age,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§404.1567(b), 416.967(b).

education, work experience, and RFC to conclude that she can perform jobs that exist in significant numbers in the national economy. (Tr. 22-23).[3] Accordingly, the ALJ found that Baker can successfully adjust to other work and, therefore, that she has not been under a disability within the meaning of the Act from her alleged onset date of April 16, 2014 through the date of the ALJ's decision. (Tr. 23-24).

IV. *Baker's Challenges*

Baker challenges the Commissioner's disability decision on three grounds: first, that the ALJ failed to properly consider all of her alleged disorders at step two and beyond; second, that the ALJ incorrectly evaluated the opinions in the record; and third, that the Appeals Council impermissibly declined to consider new evidence that she submitted to it in support of her request for review of the ALJ's decision. (*See* Dkt. No. 9-1 (Baker's Memo. of Law)). The Court will address each argument in turn.

A. *Step Two Analysis*

Baker argues that the ALJ erred at step two and beyond by declining to find her chronic pain syndrome, edema, psoriatic arthropathy, and other conditions to be severe impairments.

The ALJ must determine at step two whether the claimant has a severe impairment. 20 C.F.R. §§404.1520(c), 416.920(c). "[T]he mere presence of a disease or

---

[3] Baker argues that the ALJ erred by not calling a vocational expert to testify at the hearing regarding her ability to perform jobs that exist in significant numbers in the national economy. (*See* Dkt. No. 9-1 (Baker's Memo. of Law) at 24-25). However, as the ALJ correctly noted in his decision (Tr. 23), he was permitted to rely upon the Medical-Vocational Guidelines in lieu of testimony from a vocational expert because Baker's nonexertional limitations have little to no effect on the occupational base for unskilled light work. *See* SSR 83-14, 1983 WL 31254, at *4-5 (1983) (describing effect of Baker's nonexertional limitations on the light work occupational base); *Donaldson v. Colvin*, No. 12-CV-528S, 2013 WL 5943925, at *5 (W.D.N.Y. Nov. 5, 2013) (holding that ALJ had no duty to obtain testimony from a vocational expert because the nonexertional limitation identified by the ALJ in his RFC assessment did not significantly erode the occupational base for sedentary work).

impairment, or establishing that a person has been diagnosed or treated for a disease or impairment, is not, by itself, sufficient to render a condition severe." *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 276 (W.D.N.Y. 2018) (internal quotation marks and citations omitted). Rather, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§404.1520(c), 416.920(c). "Basic work activities," in turn, "mean the abilities and aptitudes necessary to do most jobs," for example, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" and "[c]apacities for seeing, hearing, and speaking." 20 C.F.R. §§404.1522(b), 416.922(b). It is the claimant's burden to demonstrate that he or she has a severe impairment. *See Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014) (summary order).

Baker has not met her burden of demonstrating that her chronic pain syndrome, edema, psoriatic arthropathy, and certain other conditions are severe impairments because she has not explained how any of these conditions significantly limit her ability to perform basic work activities. *See Smith*, 351 F. Supp. 3d at 276-77 (rejecting similar argument that plaintiff's "laundry list of over 15 impairments" were severe impairments because plaintiff "offer[ed] very little argument in support of her contention that her myriad of claimed physical and mental impairments are medically determinable or qualify as severe"). Although Baker argues that her conditions resulted in pain, numbness, tingling, weakness, and fatigue, among other symptoms, the ALJ considered Baker's symptoms in assessing her neck and back impairments, which he did find to be severe at step two. Specifically, the ALJ found that Baker has post-surgery of the lumbar and cervical spines

with spondylolistheses and polymyalgia rheumatica, all of which are severe impairments. (Tr. 18). The ALJ then considered Baker's pain and other symptoms in relation to these severe impairments, but ultimately found that Baker's statements concerning the intensity, persistence, and limiting effects of her pain and other symptoms are not entirely consistent with the evidence of record and do not preclude her from performing a range of light work. (Tr. 19-21). Accordingly, for these reasons, Baker's first objection to the ALJ's disability decision is without merit.

B. *Opinion Evidence*

Baker next argues that the ALJ erred by assigning "little weight" to the opinions of her treating providers, Dr. Luis Melgar, Dr. John Fahrbach, and Physician Assistant ("P.A.") Jessica Amborski, and "great weight" to the opinion of Dr. Hongbiao Liu, the consultative examiner. (Tr. 22).

An ALJ must evaluate every "medical opinion" in the record. 20 C.F.R. §404.1527(c); 416.927(c). A medical opinion is a statement from an "acceptable medical source[ ]," such as a licensed physician, "that reflect[s] judgment[ ] about the nature and severity of [the claimant's] impairments(s), including [his or her] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* §§404.1527(a)(1); 416.927(a)(1). Under the "treating physician rule," an ALJ must give controlling weight to a treating source's medical opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the ALJ elects not to give a treating source's medical opinion controlling weight, he must consider certain factors in

determining what weight to give the opinion, and "give good reasons" in his decision for the assigned weight. *Id.* §§404.1527(c)(2), 416.927(c)(2). In evaluating the opinion of a medical source who is not an "acceptable medical source," such as a physician assistant, the ALJ will consider the same factors used for evaluating the medical opinion of an acceptable medical source. 20 C.F.R. §§404.1527(f); 416.927(f).

The ALJ's decision to assign little weight to the opinions of Dr. Melgar, Dr. Fahrbach, and P.A. Amborski is supported by substantial evidence. The ALJ began with the most detailed opinion of the three, that of P.A. Amborski. (Tr. 22). P.A. Amborski states in her opinion that Baker is "very limited" in her ability to walk, stand, sit, lift, carry, push, pull, bend, use her hands, and climb stairs; moderately to very limited in her ability to mentally perform work; cannot sit or stand for more than twenty minutes; cannot "walk distances;" and cannot lift. (Tr. 452). While acknowledging that P.A. Amborski is a treating provider, the ALJ found that her opinion is not supported by the medical evidence or Baker's activities. (Tr. 22). This finding is supported by substantial evidence.[4] First, the ALJ correctly noted that medical evidence in the record reflecting Baker's normal gait and strength and overall improvement contradict P.A. Amborski's restrictions. (Tr. 22; *see also* Tr. 20-21 (discussing medical evidence)); *see* 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent [an] opinion is with the record as a whole, the more weight we will give to that [ ] opinion."). Second, Baker's travel to Arizona during the relevant period contradicts P.A. Amborski's finding that she cannot sit for more than

---

[4] Baker also argues that the ALJ should have addressed P.A. Amborski's statement in a disability parking permit application that Baker has a "permanent disability" and is "severely limited in [her] ability to walk." (Tr. 449). The ALJ was not required to discuss every last shred of evidence in the record. In any event, P.A. Amborski's statements in the application are similar to those she made in her opinion, which, as discussed below, the ALJ properly discounted.

twenty minutes. (Tr. 22 *referring to* Tr. 517). Regardless of whether Baker traveled by plane or vehicle to Arizona, she had to have sat for more than twenty minutes, which undermines P.A. Baker's restriction. Although Baker contends that her travel is insufficient to show that she can perform full-time work, the ALJ was careful to cite Baker's trip to Arizona merely to show that it contradicts part of P.A. Amborski's opinion, not as proof that she can work full-time. (Tr. 21-22); *see Williams v. Colvin*, No. 14-CV-947S, 2017 WL 3404759, at *6 (W.D.N.Y. Aug. 7, 2017) ("[A]n ALJ may consider Plaintiff's daily activities, symptoms, and objective medical evidence together to determine whether a treating physician is credible.").[5]

The ALJ's decision to reject Dr. Fahrbach's opinion is also supported by substantial evidence. Dr. Fahrbach issued several single-page letters in 2014 stating that Baker is "totally disabled." (Tr. 412, 418, 420, 421, 435, 590). In giving Dr. Fahrbach's "totally disabled" opinion little weight, the ALJ cited the same reasons that he had given for rejecting P.A.'s Amborski's opinion — namely, that Baker's medical records and her ability to travel contradict a finding of total disability. (Tr. 22). Moreover, although not specifically mentioned by the ALJ in his decision, whether or not a claimant is "disabled" is a question reserved to the Commissioner. 20 C.F.R. §§404.1527(d); 416.927(d). The ALJ was thus not required to give Dr. Fahrbach's opinion that Baker is totally disabled "any special significance." *Id.* §§404.1527(d)(3); 416.927(d)(3).

The ALJ also had substantial evidence to reject Dr. Melgar's opinion. Dr. Melgar stated in a brief, one-page letter that Baker cannot sit for more than thirty minutes and is

---

5      Contrary to Baker's argument (Dkt. No. 9-1 (Baker's Memo. of Law) at 22-23) P.A. Amborski, Dr. Fahrbach, and Dr. Melgar did not account for her trip to Arizona when they rendered their opinions because Baker did not make the trip until the fall of 2015 (*see* Tr. 517), well after all three providers had already rendered their respective opinions.

"on 100% total disability." (Tr. 446). As noted above, the medical evidence of record and Baker's trip to Arizona contradict these findings. Moreover, like Dr. Fahrbach's opinion, Dr. Melgar's conclusion that Baker is one-hundred percent disabled is not binding on the Commissioner. 20 C.F.R. §§404.1527(d), 416.927(d).

Turning to Dr. Liu's opinion, he opined in relevant part that Baker has "mild to moderate limitation for prolonged walking, bending, and kneeling." (Tr. 440-44). The ALJ's decision to give great weight to Dr. Liu's opinion is supported by substantial evidence because, as the ALJ correctly noted in his decision, the opinion is "generally consistent with the record as a whole, which documents [Baker's] improved strength and pain with continued treatment, often noted normal gait, and lack of distress." (Tr. 22). Although Baker argues that Dr. Liu's opinion is vague, the Court disagrees and finds that it supports an RFC of light work (which requires "a good deal of walking or standing" but not necessarily "prolonged walking") with some limitations in stooping and bending. Moreover, in formulating his RFC assessment, the ALJ relied upon all of the medical and non-medical evidence in the record, not just Dr. Liu's opinion. (*See* Tr. 19-22 (ALJ's discussion of evidence supporting his RFC assessment)). Accordingly, for these reasons, the amount of weight the ALJ assigned to each opinion in the record is supported by substantial evidence. Baker's second objection to the ALJ's disability decision is thus without merit.

### C. *New Evidence Submitted to the Appeals Council*

Baker argues that the Appeals Council erred by not accepting and considering new evidence that she submitted to it in support of her request for review of the ALJ's decision, namely, certain imaging records taken in June 2017 (Tr. 52), after the ALJ had already

rendered his decision.  Baker argues that the Appeals Council should have accepted this evidence because it is "new and material" and relates to the period before the ALJ's decision.  (Dkt. No. 9-1 (Baker's Memo. of Law) at 25).

The Commissioner's regulations direct the Appeals Council to grant a claimant's request for review of an ALJ's decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision."  20 C.F.R. §§404.970(a)(5), 416.1470(a)(5).  However, before the Appeals Council may consider new evidence from the claimant, the claimant must show "good cause" for not submitting the evidence to the ALJ before the hearing.  *Id.* §§404.970(b), 416.1470(b).  The good cause requirement became effective on January 17, 2017, before Baker asked the Appeals Council to review the ALJ's decision in this case.  20 C.F.R. §§404.970, 416.1470; *Smith v. Berryhill*, No. 1:18-337-CMC-SVH, 2019 WL 1549036, at *15 (D.S.C. Mar. 6, 2019) ("As of January 17, 2017, [the regulations provide that] the Appeals Council will only consider additional evidence if a claimant shows 'good cause' for not having submitted the evidence to the ALJ, or informing her of it, at least five business days prior to the hearing."), *report and recommendation adopted*, 2019 WL 1533171 (D.S.C. Apr. 9, 2019).[6]  The Appeals Council advised Baker of the good cause requirement before she submitted the imaging records.  (Tr. 8).

The Appeals Council declined to consider Baker's new evidence because it found she lacked good cause for not submitting the evidence earlier in the proceeding.  (Tr. 2). Baker ignores the Appeals Council's good cause finding, choosing instead to focus on

---

[6]  The Court notes that both parties rely on the prior versions of 20 C.F.R. §§404.970 and 416.1470 in their respective briefs and thus fail to account for the "good cause" requirement.

- 13 -

how her new evidence purportedly contradicts the ALJ's disability determination. Absent any argument from Baker that the Appeals Council erred in finding she lacked good cause for not submitting the new evidence earlier than she did, Baker's objection to the Appeals Council's refusal to consider this evidence in denying her request for review is without merit.[7]

## CONCLUSION

For the foregoing reasons, Baker's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: May 6, 2019
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge

---

[7] Although not necessary to the Court's decision, the Court notes that simply because the imaging records were created after the ALJ rendered his decision does not necessarily mean that Baker had good cause for not submitting the records earlier in the proceeding. *See Smith*, 2019 WL 1549036, at *21, 27.